# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| RANDY BAYNE, et al., individually, ]<br>and on behalf of all others similarly ]<br>situated, ]<br>   ]<br>   Plaintiffs, ]<br>   ]<br>v. ]<br>   ]<br>TAISHAN GYPSUM COMPANY, ]<br>LTD. f/k/a SHANDONG TIAHE ]<br>DONGXIN CO., LTD., et al, ]<br>   ]<br>   Defendants. | 4:17-cv-1286-KOB |

## MEMORANDUM OPINION

This case is before the court after remand from the United States Judicial Panel on Multidistrict Litigation and on Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.'s (collectively "Taishan")[1] motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (doc. 38). Plaintiffs responded (doc. 41), and Taishan replied (doc. 42). The motion is ripe for review. For the reasons set forth below, the court **GRANTS** Taishan's motion to the extent that it finds that the court lacks personal jurisdiction over Taishan but, at Plaintiffs' request, transfers this case to the United States District Court for the Northern District of Florida, Pensacola Division, under 28 U.S.C. § 1404(a), where presumably personal jurisdiction may exist.

### I.   Background

This case arises out of the installation of Chinese drywall—used because of a shortage of

---

[1]   Defendant Tai'an Taishan Plasterboard Co., Ltd. is a wholly owned subsidiary of Defendant Taishan Gympsum Co., Ltd.

1

drywall in the U.S. marketplace after Hurricanes Katrina and Rita—in Alabama homes and buildings. The Chinese drywall allegedly led to "odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems." (Doc. 41 at 6–7). On August 1, 2017, a group of owners and residents of real property containing the defective, Chinese-manufactured drywall in Alabama brought a putative class action against Taishan and several other Defendants for designing, manufacturing, importing, distributing, delivering, supplying, marketing, inspecting, installing, and selling defective gypsum drywall that was used in their residential and business structures. (Doc. 1). On August 31, 2017, the United States Judicial Panel on Multidistrict Litigation transferred the case to the United States District Court for the Eastern District of Louisiana and assigned it to Judge Eldon E. Fallon for consolidated pretrial proceedings, like discovery. (Doc. 2). On January 10, 2020, the MDL court approved a Global Class Action Settlement. (Doc. 3-1). The claimants in the present action decided to exercise their rights to opt-out of the settlement and proceed independently. On April 15, 2020, this case—the merits of which were never litigated in the MDL—was remanded back to this court. (Doc. 3).

On September 25, 2020, Taishan filed a motion to dismiss Plaintiffs' complaint. (Doc. 5). On September 28, 2020, Defendants Beijing New Building Materials Public Limited Co. ("BNBM"), China National Building Materials Co., Ltd. ("CNBM Co."), and Beijing New Building Materials Group Co., Ltd. ("BNBM Group") also filed a motion to dismiss Plaintiffs' complaint. (Doc. 6). On October 23, 2020, Plaintiffs filed a notice of voluntary dismissal as to Defendants BNBM, CNBM Co., and BNBM Group (doc. 22). The court dismissed Plaintiffs' claims against those Defendants without prejudice. (Doc. 23). On November 12, 2020,

Plaintiffs—with the court's leave—filed an amended complaint (doc. 34). Taishan then filed the present revised motion to dismiss (doc. 39).

## II.     Legal Standard

Taishan moves to dismiss Plaintiffs' Amended Complaint (doc. 34) pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, asserting that Plaintiffs have not met their burden to plead a basis for jurisdiction and that the court has neither general nor personal jurisdiction over Taishan. (Doc. 39 at 12–14). When a defendant moves to dismiss a complaint for lack of personal jurisdiction and the court does not hold an evidentiary hearing, "the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (citations omitted). "A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict," and "[t]he district court must construe the allegations in the complaint as true, to the extent that they are uncontroverted by defendants' affidavits or deposition testimony." *Id.* When defendants submit affidavits or deposition testimony showing the court lacks personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless [defendants' affidavits or deposition testimony] contain only conclusory assertions that defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Where the evidence conflicts, the court "must construe all reasonable inferences in favor of the non-movant plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

### III. Discussion

#### A. Threshold Burden

First, in its motion to dismiss, Taishan asserts that Plaintiffs have not met their initial burden to plead jurisdiction under the *Iqbal/Twombly* pleading standards. (Doc. 39 at 12). Under that standard, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Looking at the Amended Complaint (doc. 34), the court finds that Plaintiffs have alleged sufficient facts to meet their threshold burden for pleading personal jurisdiction. Plaintiffs allege that Taishan is subject to the Alabama Long-Arm Statute for manufacturing, selling, distributing, marketing, and placing gypsum drywall within the stream of commerce with the expectation that consumers in several states, including Alabama, would purchase it. The court finds that these allegations are sufficient to meet the threshold burden.

#### B. Personal Jurisdiction

Second, Taishan argues that no Plaintiff can establish personal jurisdiction over Taishan because (1) Taishan is not subject to the *general* jurisdiction of Alabama courts, as it has no presence or continuous and systematic contacts in Alabama, and because (2) Taishan is not subject to the *specific* jurisdiction of Alabama courts, as Plaintiffs cannot show and have not alleged that Taishan "purposefully directed the drywall in their particular property to this State or otherwise availed itself of the privilege of doing business in Alabama." (Doc. 39 at 5, 9).

4

Whether a federal court may exercise personal jurisdiction over a non-resident defendant in a diversity case is usually a two-step inquiry involving a state's long-arm statute and the due process requirements of the United States Constitution. In Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b)). The Due Process Clause of the Constitution allows for general and specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011). General jurisdiction is based upon "a party's contacts with the forum state that are unrelated to the litigation," and specific jurisdiction "is founded on a party's contacts with the forum state that are related to the cause of action." *Madara*, 916 F.2d at 1516 n. 7. In considering whether general or specific personal jurisdiction complies with due process, the court must consider "whether the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Plaintiffs do not allege in their Amended Complaint that Taishan is subject to the general jurisdiction of this court; instead, they present a "stream of commerce" theory for specific personal jurisdiction. Plaintiffs assert that Taishan,

> Together with its affiliates and/or actual apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including the State of Alabama.

5

(Doc. 34 at 4). Thus, the court considers whether it may exercise specific personal jurisdiction over Taishan.

The Eleventh Circuit has set forth a three-part test for satisfying due process when a plaintiff alleges specific jurisdiction. The court must consider:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted).

Before analyzing whether the court's personal jurisdiction over Taishan satisfies due process under the Eleventh Circuit's test, the court will expound upon the first two prongs of the test.

    1. Contacts Related to Cause of Action

For the first prong, the court must "focus on the direct causal relationship among 'the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). The Eleventh Circuit has held that in the tort context, "the contact [with the forum] must be a 'but-for' cause of the tort." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1223 (11th Cir. 2009). But the Supreme Court has recently held that "a strict causal relationship between the defendant's in-state activity and the litigation" is not necessary. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Rather, in considering whether a suit "'arise[s] out of or *relates[s] to* the defendant's contacts with the forum,'" the Supreme Court clarified in *Ford* that the standard "contemplates that some relationships will support jurisdiction

6

without a causal showing." *Id.* (citations omitted) (emphasis in original). But, the Supreme Court stated, the clarification of the standard "does not mean anything goes." *Id.* Instead, "specific jurisdiction attaches in cases . . . when a company . . . serves a market for a product in the forum State and the product malfunctions there." *Id.* at 1027.

Here, Plaintiffs allege that Taishan "manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including the State of Alabama." (Doc. 34 at 4). In response, Taishan asserts that it has no contacts with Alabama. (Doc. 39 at 15).

    2.  <u>Second Prong: Purposeful Availment, Foreseeability, and "Stream of Commerce" Theory</u>

For the second prong, purposeful availment, the court must consider foreseeability—that is, whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). Considering purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the unilateral activity of a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1984) (citations omitted). Direct contact with the forum state is not required; it is enough that a defendant "delivers its product into the stream of commerce with the *expectation* that it will be purchased by consumers in the forum State." *World-Wide Volkswagen*, 444 U.S. at 297 (emphasis added).

Supreme Court jurisprudence on the "stream of commerce" theory—first introduced in

*World-Wide Volkswagen*—is somewhat convoluted. In *World-Wide Volkswagen*, the Court reasoned that

> The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 298.

The Court considered the "stream of commerce" theory again in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987); that case involved Japanese tire valve manufacturer Asahi, whose product was found in California. In a plurality opinion, Justice O'Connor and three other justices stated

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.

*Id.* at 112.

Justice O'Connor's formulation is known as the "stream of commerce-plus" test. In his concurrence in *Asahi*, Justice Brennan agreed with the plurality's conclusion that California's exercise of jurisdiction violated due process because it did not comply with "fair play and substantial justice." But he rejected the "stream of commerce-plus" test. Instead, he reasoned that no additional conduct was necessary for minimum contacts as long as "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale." *Id.* at 117.

8

The Court again considered the "stream of commerce" test in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), another plurality opinion. In that case, the Court considered the Supreme Court of New Jersey's holding that "New Jersey's courts [could] exercise jurisdiction over a foreign manufacturer of a product so long as the manufacturer 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.'" *Id.* at 877 (quoting *Nicastro v. McIntyre Machinery America, Ltd.*, 201 N.J. 48, 77 (N.J. 2010)). The plurality in *McIntyre* rejected the New Jersey Supreme Court's broad interpretation of stream-of-commerce doctrine and reasoned that the petitioner did not "engage in any activities in New Jersey that reveal an intent to invoke or benefit from the protection of its laws." *McIntyre*, 564 U.S. at 887. In his concurrence, Justice Breyer—joined by Justice Alito—agreed that New Jersey could not constitutionally exercise jurisdiction but stated that "the outcome of [the] case is determined by our precedents." *Id.* (Breyer, J., concurring).

The Eleventh Circuit has not revisited "stream of commerce" theory post-*McIntyre*, and judges in this district have different opinions on whether *McIntyre* changed the stream-of-commerce analysis and what standard actually applies. Judge Kallon has noted that

> Justice Breyer's concurrence [in *McIntyre*] agreed in *rejecting* the "absolute" argument that, as a general rule, "a producer *is* subject to jurisdiction for a product-liability action so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states."

*King v. General Motors Corp.*, 2012 WL 134066, at *6 (N.D. Ala. Apr. 18, 2012) (quoting *McIntyre*, 564 U.S. at 2793 (Breyer, J. concurring)); *see also Thornton v. Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303, 1311 (N.D. Ala. February 13, 2020) (in which Judge Kallon

9

cited approvingly the plurality opinion in *McIntyre*, 564 U.S. at 885−86). In contrast, Judge Hopkins has "agreed with the courts which have found that *McIntyre* merely maintained the status quo" and applied pre-*McIntyre* Eleventh Circuit law on stream-of-commerce theory. *Johnson v. Chrysler Canada, Inc.*, 24 F. Supp. 3d 1118, 1133 (N.D. Ala. June 5, 2014).

The Eleventh Circuit's pre-*McIntyre* cases are unclear as to whether this circuit adopts a "stream of commerce" test or a "stream of commerce plus" test. *Johnson*, 24 F. Supp. 3d at 1136; *see also Simmons v. Big No. 1 Motor Sports, Inc.*, 908 F. Supp. 2d 1224, 1228 (N.D. Ala. 2012) ("It is unclear which of the two tests the Eleventh Circuit endorses under the facts of this case."). The Eleventh Circuit has applied, without adopting, the more rigorous "stream of commerce plus" test. *See Vermeulen v. Renault*, 985 F.2d 1534, 1547 (11th Cir. 1993) (finding that jurisdiction was consistent with the "more stringent 'stream of commerce plus' analysis" without "determin[ing] which standard actually control[led] [the] case"). But the Eleventh Circuit has also applied the broader "stream of commerce" test. *See Ruiz de Molina*, 207 F.3d 1351, 1357−58 (11th Cir. 2000). This court finds that, under both Supreme Court and Eleventh Circuit precedent, it should apply the broader "stream of commerce" test to the facts of this case. Thus, the court will consider whether Taishan delivered its drywall into the stream of commerce with the expectation that consumers in Alabama would purchase it.

3. <u>Whether Plaintiffs Have Established that Their Claims Arise from or Relate to Taishan's Contacts with Alabama and that Taishan Purposely Availed Itself of the Privilege of Conducting Business in Alabama</u>

Taishan asserts that Plaintiffs cannot show that Taishan had contacts with Alabama or "purposefully availed" itself of conducting activities in Alabama because they assert only that

10

Taishan sold drywall to the United States "with the expectation that the drywall would be purchased by thousands of consumers . . . within various States, including but not limited to, Alabama." (Doc. 39 at 17); *see also* Plaintiffs' Am. Compl. (doc. 34 at 4). Taishan argues that Plaintiffs do not "identify a specific contact that Taishan had with Alabama regarding any Plaintiff's claim" and that "if any of [its] product reached Alabama, it did so in an unpredictable eddy, not in the stream of commerce." (Doc. 39 at 17, 20). Taishan argues that "[t]o the extent Taishan drywall made its way to Alabama, it would have been through the unilateral activity of a third party." (*Id.* at 18).

In support of its motion to dismiss, Taishan submitted a declaration from Jia Tongchun, the chairman of Taishan's board. (Doc. 39-1). Mr. Tongchun states that Taishan "manufactures its drywall exclusively in China" and "sells drywall exclusively in China." Mr. Tongchun states that Taishan never "manufactured products in Alabama," "sold drywall in Alabama," "sold drywall in China to distributors located in Alabama," "sent any invoices to Alabama," "marketed its drywall in Alabama," "distributed its drywall in Alabama," "advertised in Alabama," "solicited sales in Alabama," or "performed services in Alabama." (*Id.*).

Mr. Tongchun states that Taishan "did not seek out United States sales" but that American companies asked Taishan for drywall due to a shortage in drywall starting in March 2006 and ending in July 2007. (Doc. 39-1). Mr. Tongchun states that Taishan entered into contracts with American companies but they were "stand-alone agreements for defined amounts of drywall" and not "long-term or recurring distribution agreements . . . to distribute drywall in the United States." Mr. Tongchun states that "Taishan was never provided with and had no knowledge of the identity or location of any ultimate homeowner end-user anywhere" and

11

"Taishan had no control over how and where drywall in the United States was transported, resold or otherwise distributed." (*Id.*). Mr. Tongchun's declaration provides evidence that the court lacks personal jurisdiction; thus, the burden shifts back to Plaintiffs to produce evidence supporting jurisdiction.

In their response, Plaintiffs assert that Taishan "sold its drywall products to multiple U.S.-based entities for resale and distribution in the stream of commerce, without limitation." (Doc. 41 at 10). Plaintiffs point to profile forms submitted in the MDL that state that Taishan "made sales to US-based distributors in China" and that Taishan "referred to itself as the 'exporter' for purposes of preparing tax invoices under Chinese tax law." (Docs. 41 at 11; 41-1 at 17). Plaintiffs state that "[a]lthough Taishan contracted with distributors primarily in Virginia, Louisiana, and Florida, there has been *no documentation produced by Taishan to demonstrate that they wished their product distribution to be limited in any way in the United States marketplace.*" (Doc. 41 at 11) (emphasis added).

Plaintiffs further assert that

Taishan sold [] hundreds of thousands of sheets of drywall to U.S. distributors, many of whom were known to conduct business in the State of Alabama. Given the widespread, consistent, pervasive, ongoing sale of their product in the Southeastern United States, including to distributors known to conduct business in the State of Alabama, and given the number of homes in Alabama that received the defective drywall product manufactured by Defendants, it defies logic to conclude that the Taishan Defendants did not anticipate or desire that their products would reach the Alabama market for sale to Alabama buyers.

(*Id.* at 13).

Plaintiffs contend that "sufficient contacts exist through Taishan's business partners" to allow the court to exercise specific personal jurisdiction over Taishan. Plaintiffs point to

12

Taishan's selling to one particular "business partner"—distributor Venture Supply, Inc., which is based in Virginia and "had extensive reach in its distribution network across the Southeastern United States and into Alabama." (*Id.* at 18). Plaintiffs point to Taishan's manufacturer profile form, which show that Taishan sold drywall to Venture Supply in China on two occasions—100,000 sheets on February 24, 2006, and 53,912 sheets on July 20, 2006. (Doc. 41-1 at 4). Plaintiffs also point to Venture Supply's shipping documents, which "establish[] delivery of Taishan drywall to Birmingham on at least fifteen (15) occasions" in April, September, and October 2006. (Docs. 41 at 18; 41-6). Plaintiffs assert that because of Venture Supply's dealings in Alabama, "Taishan's business within the state should be imputed." (Doc. 41 at 18).

Plaintiffs point to Judge Fallon's Order & Reasons in the MDL litigation, in which he found that personal jurisdiction was appropriate over Taishan in Florida, Louisiana, and Virginia on an enterprise theory. (Doc. 41-2). Plaintiffs submit that Venture Supply, Inc. and Taishan should be considered a single enterprise, such that Venture Supply's activity in Alabama should be imputed to Taishan. (Doc. 41 at 21). Plaintiffs state that the shipping documents "demonstrate[] that the contacts in Alabama are not random or attenuated" but "consistent and pervasive." (*Id.* at 25). Plaintiffs submit that they have met their burden for showing the first prong of establishing specific jurisdiction.

But the court disagrees. Plaintiffs have not convinced the court that Taishan and Venture Supply are a single enterprise. Judge Fallon's Order & Reasons found that Taishan and its *parent companies* constituted a single business enterprise. (Doc. 41-2). Plaintiffs have offered no evidence or argument to convince the court that Venture Supply was the alter ego or agent of Taishan in Alabama; rather the evidence shows that Venture Supply is a distributor that

13

purchased drywall from a producer.

To satisfy the second prong and show purposeful availment, Plaintiffs point to the "effects test" for purposeful availment, which requires that a defendant's tort be "intentional," "aimed at the forum state," and "cause[] harm that the defendant should have anticipated would be suffered in the forum state." (Doc. 41 at 18–19) (citing *Louis Vuitton*, 736 F.3d at 1356). Plaintiffs state that Venture Supply directed Taishan's product to Birmingham on a regular basis by selling drywall to the Birmingham branch of Building Materials Wholesale and that this shows "that Taishan's acts through its agent were aimed at Alabama business, causing harm that defendants should have anticipated would be suffered in Alabama." (Docs. 41 at 19; 41-6).

Plaintiffs argue that "the goal of distributors is to sell the product to all willing buyers, no matter the location" and that Taishan "placed its product into the stream of commerce and should have expected it to reach businesses and individuals in the state of Alabama who were in need of drywall products in the aftermath of Hurricane Katrina." (Doc. 41 at 28–29). Plaintiffs point to a list of entities that participated in the class action settlement, a number of which they claim are businesses operating in or around Alabama, and argue that this evidence shows Taishan should have expected the product to reach businesses and individuals in Alabama. (*Id*; Doc. 41-4).

In reply, Taishan argues that a spreadsheet showing that Venture Supply—a distributor located in Virginia—sent drywall to Alabama "does not show that Taishan *expected* its drywall to go to Alabama" but only that the drywall arrived in Alabama through a third party. (Doc. 42 at 3). The court finds that the Venture Supply shipping document (doc. 41-6) shows only that drywall came to Alabama through a third-party located in Virginia and not that Taishan had any

14

knowledge or expectation that its drywall might go to Alabama. Contacts with the United States generally or with Virginia specifically are not contacts with Alabama, and Plaintiffs have not provided *evidence* that Taishan reasonably expected its drywall to go to Alabama or purposely availed itself of doing business in Alabama. The defective drywall reached Alabama through the apparently unilateral activity of third-party Venture Supply, which is not sufficient for showing that Taishan purposely availed itself of the privilege of conducting activities within Alabama. The court finds that Plaintiffs have failed to satisfy the second prong of due process analysis.

    4.   Third Prong: "Traditional Notions of Fair Play and Substantial Justice"

If the plaintiff satisfies the first two prongs of the due process analysis, the court then considers whether exercising personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier*, 736 F.3d at 1355. In doing so, the court considers several factors: "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Id.* at 1358 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008). Plaintiffs have not satisfied the first two prongs of the due process analysis because they have not shown that Taishan had contacts with Alabama and because they have not shown that Taishan delivered its product into the stream of commerce with the expectation that Alabama consumers would purchase it. Plaintiffs have not established a prima facie case that the court has personal jurisdiction over Taishan. Thus, the court forgoes considering whether exercising personal jurisdiction would comply with "traditional notions of fair play and substantial justice."

### C. Transfer

Plaintiffs request that if the court finds it lacks specific personal jurisdiction over Taishan that, instead of dismissing the case, the court transfer this case to the United States District Court for the Northern District of Florida, Pensacola Division, for further proceedings so that Plaintiffs will not have to refile the case and serve Taishan again under the Hague Convention. (Doc. 41 at 29–30). Defendants contend that Plaintiffs have not presented evidence to suggest that their claims arise from Taishan's conduct in Florida and that the only appropriate state for transfer is Virginia, where Venture Supply is located. (Doc. at 11). Under 28 U.S.C. § 1404(a), the court "may transfer any civil action to any other district or division where it might have been brought." Because it is the most convenient court for Plaintiffs and is not more or less convenient for the foreign defendant, the court will transfer this action to the United States District Court for the Northern District of Florida, Pensacola Division.

### IV. Conclusion

As explained above, the court **FINDS** that it does not have specific personal jurisdiction over Defendant Taishan and **TRANSFERS** this action to the United States District Court for the Northern District of Florida, Pensacola Division.

**DONE** and **ORDERED** this 13th day of August, 2021.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE

16